# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1788V

| | |
|---|---|
| SARA J. WHITE,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: April 23, 2024 |

*Brian L. Cinelli*, Schiffmacher, Cinelli, Adoff, LLP, Buffalo, NY, for Petitioner.

*Tyler King*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On December 7, 2020, Sara J. White filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, or in the alternative a caused-in-fact injury, after receiving an influenza ("flu") vaccine on September 30, 2018. Petition at ¶¶ 1, 41, 50. She further alleges that "she felt pain in her right shoulder immediately upon receiving the shot, which is well within the mandatory 48 hours." *Id.* at ¶ 46; *accord.* Exhibit 1 at ¶ 7 (affidavit).

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties dispute Petitioner's success in establishing the pain onset needed for a Table SIRVA, and whether the "severity requirement" necessary for all Program claims is met. For the reasons discussed below, I find that Petitioner likely suffered the residual effects of her SIRVA for more than six months, the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination, and she has satisfied the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

## I.   Relevant Procedural History

Along with the Petition, Ms. White filed the affidavit and medical records required under the Vaccine Act, as well as an affidavit from her husband and medical articles related to SIRVA. Exhibits 1-16, ECF No. 1; *see* Section 11(c). Approximately two months later, on February 11, 2021, she provided her list of medical providers and statement of completion in February 2021. ECF Nos. 7-8. On May 5, 2021, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 9.

On August 30, 2021, Respondent requested that Petitioner provided updated medical records to establish that she suffered the residual effects of her alleged SIRVA injury for more than six months. ECF No. 15; *See* Section 11(c)(1)(D)(1) (the Vaccine Act's severity requirement). In response, Petitioner provided affidavits from her neighbor (a nurse) and kitchen manager at the restaurant where she worked. Exhibits 17, Dec. 13, 2021, ECF No. 19 (co-worker); Exhibit 18, filed Jan. 10, 2022, ECF No. 21 (neighbor).

During the first half of 2022, Respondent again expressed his opinion that the record lacked sufficient evidence to show Petitioner had satisfied the Vaccine Act's severity requirement. Status Report, filed May 13, 2022, ECF No. 25. On July 22, 2022, he filed his Rule 4(c) Report, opposing compensation. ECF No. 27. In addition to arguing that Petitioner had failed to provide evidence of six-month sequelae, Respondent insisted Petitioner had not established that she suffered shoulder pain within 48 hours of vaccination. *Id.* at 5-8. On August 5, 2022, I set a scheduling for briefing from the parties, noting that I would rule on the factual issues raised by Respondent. ECF No. 28.

More than two months later, on October 19, 2022, Petitioner filed her motion and supporting memorandum. ECF No. 30. Emphasizing her last physical therapy ("PT") session only two weeks short of the six-month mark, lack of prior symptom improvement, and supporting affidavits she provided, Petitioner maintained she has satisfied the severity requirement. *Id.* at 11-13. She also insisted she has submitted sufficient proof of

onset within 48 hours, and thus established a Table SIRVA. *Id.* at 14-16. Citing the medical articles she provided and the opinion of her orthopedist, Petitioner argued, in the alternative, that she has established causation. *Id.* at 16-22.

In his response, filed on December 5, 2022, Respondent reiterated his arguments regarding onset and severity. ECF No. 32. Citing the lack of medical records for treatment after March 15, 2019, he maintained "the only contemporaneous medical records weigh against [P]etitioner's claim that she has satisfied the six-month severity requirement." *Id.* at 8. Regarding the supporting affidavits Petitioner provided, he criticizes what he characterizes as a lack of specificity. *Id.* Without specifying why, he also argued that the contemporaneously created medical records do not support Petitioner's assertions of 48-hour pain onset. *Id.* at 9. Finally, Respondent asserted, "SIRVA is an injury defined by administrative rulemaking and . . . [P]etitioner may not pursue a causation-in-fact claim." *Id.* at 10.

In her reply, filed on December 28, 2022, Petitioner supplemented the arguments in her motion. ECF No. 34. She stressed that she stopped attending formal PT "because of the financial implications and its limited effectiveness." *Id.* at 4. She also emphasized consistent reports of immediate pain contained in the contemporaneously created medical records. *Id.* 7-8.

The matter is now ripe for adjudication.

## II. Finding of Fact Regarding Onset and Duration

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA and whether Petitioner continued to suffer the residual effects of the SIRVA for more than six months. 42 C.F.R. § 100.3(a) XIV.B. (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

### A. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.

Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may

be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

      **B.**     **Analysis**

I make the onset and severity findings after a complete review of the record to include all medical records, affidavits or declarations, and additional evidence filed. Specifically, I base the findings on the following evidence:

- On September 30, 2018, when 31 years old, Petitioner received the flu vaccine intramuscularly at a Wegmans Pharmacy in Amherst, New York. Exhibit 4 at 1-2. The vaccine record does not identify the arm in which it was administered. *Id.* When asked for that information, the area pharmacy manager stated it could not be provided because that portion of the form was blank, and it was more than two years since vaccination. *Id.* at 5.

- Less than a month later, on October 25, 2018, Petitioner visited an urgent care clinic, complaining of right arm pain. Exhibit 5 at 17. Reporting that she had received a flu shot on September 30th, she recalled "having pain in right arm/shoulder every [sic] since and getting worse." *Id.* Observing no swelling, redness, warmth, or limitations in range of motion ("ROM"), the urgent care physician diagnosed Petitioner with acute right shoulder pain and prescribed Ibuprofen. *Id.* at 18. At this visit, Petitioner rated her current pain level as eight out of ten. *Id.*

- On November 30, 2018, Petitioner attended a new patient physical with a primary care provider ("PCP"), reporting right arm pain after receiving a flu shot in September. Exhibit 6 at 1. She described "limited ROM since then – felt immediate pain since the shot – ibuprofen prescribed . . . with moderate relief." *Id.* at 2. The PCP diagnosed Petitioner with right shoulder pain and cervicalgia, instructed her to continue taking ibuprofen, referred her to an

- orthopedist, and ordered PT. *Id.* at 4. The PCP also ordered bloodwork and instructed Petitioner to continue eating healthy and exercising. *Id.*

- A few days later, on December 4, 2018, Petitioner was seen by the orthopedist for right shoulder pain that "has been ongoing since 9/30/201, after receiving the flu shot." Exhibit 7 at 1. Describing her pain as continuous, sharp, sore, throbbing, and radiating down her arm and into her neck, Petitioner rated its severity at seven out of ten. *Id.* Upon examination, the orthopedist observed no obvious effusion or "specific point of tenderness, [and] virtually full range of motion of the shoulder with some discomfort with abduction to about 170 degrees" and "some tenderness over the trapezius on the right side." *Id.* at 2. X-rays taken that day were unremarkable. *Id.* The orthopedist diagnosed Petitioner with right shoulder pain and muscle strain in the neck and tendon of the long head biceps, ordered an MRI, and referred her to another physician for examination of her neck.[3] Exhibit 7 at 2. The orthopedist opined "[m]y impression is an element of a subacromial bursitis of the shoulder, probably cervical radiculopathy." *Id.*

- On December 15, 2018, Petitioner underwent an MRI of her right shoulder. Exhibit 7 at 5. The findings included "[l]ow humeral head/upper neck level inflammatory signal within the soft tissues between the distal teres minor muscle/tendon and deltoid muscle that is likely related to a flu shot injection." *Id.* Some findings were potentially attributed to "a reactive/sterile osteitis or osteomyelitis." *Id.*

- On January 4, 2019, Petitioner attended her first PT session for a "complain[t] of right shoulder pain, discomfort; decreased ROM following flu shot end of September." Exhibit 8 at 2. Noting to be a waitress with three children under the age of five, Petitioner reported cracking, popping, and difficulty sleeping. The physical therapist observed tenderness upon palpitation and minor limitations in all planes of ROM. *Id.*

- Petitioner attended three more PT sessions in January. Exhibit 8 at 3. Although she sometimes reporting "feeling pretty good" (visit on January 10th), she reported no significant improvement. *Id.*

- Petitioner returned to the orthopedist in late February 2021. Exhibit 7 at 7-9 (February 22nd visit). At this visit, she again reported "pain over the lateral

---

[3] There is no evidence that Petitioner ever saw this other physician.

6

- aspect of the right shoulder after a flu shot on September 30, 2018." *Id.* at 7. Stating that "[s]he initially felt some radiation down to the lateral aspect of the elbow," Petitioner report[ed] she has a little stiffness in the neck, but really no neck pain at the present time." *Id.* Stating that she did not believe PT was helping, she asked to discontinue this treatment. *Id.* at 8.

- Based upon his examination and the MRI results, the orthopedist assessed Petitioner as suffering from right shoulder pain and effusion "due to flu shot." Exhibit 7 at 8. Stating that he did believe Petitioner had "osteomyelitis or an infectious process," the orthopedist offered a subacromial injection which Petitioner declined. *Id.* He instructed Petitioner to increase her ibuprofen dosage and continued her conservative treatment, icing and resting her arm. *Id.*

- In March 2019, Petitioner attended two more PT sessions. Exhibit 8 at 3. The record from the March 8th session noted that Petitioner had seen the orthopedist and was determined to have no structural damages. At her last PT session on March 15, 2019, Petitioner reported "feeling about the same." She was provided with a home exercise program. *Id.*

- Petitioner has not filed any updated medical records.

- In her affidavit, executed on December 5, 2020, Petitioner reported feeling a sharp pain immediately upon vaccination. Exhibit 1 at ¶ 6. She explained that she initially visited an urgent care clinic because she "did not have a primary care physician at the time." *Id.* at ¶ 8. After stopping formal PT, Petitioner stated that she continued her HEP until May 2020, when she became pregnant. *Id.* at ¶ 14. Acknowledging that her pain was not as great as before, Petitioner alleges that she still gets pain in her shoulder, especially when laying on her side, and can sometimes feel and hear clicking. *Id* at ¶ 16. Petitioner also recalled that her right shoulder pain affected her ability to work as a waitress for many months after vaccination. *Id.* at ¶ 17.

- In his affidavit, also executed on December 5, 2020, Petitioner's husband states that he recalled Petitioner complaining of right shoulder pain immediately after vaccination. Exhibit 2 at ¶ 5. He maintains that he can still feel clicking in Petitioner's shoulder "and she still cannot do a number of things with her right arm." *Id.* at ¶ 8.

- In his affidavit, executed on December 9, 2021, Petitioner's co-worker recalled her being absent from work after September 2018, and her informing him it was due to her vaccine injury when she returned. Exhibit 17 at ¶¶ 2-3. He also recalled having to make accommodations for her at work, and believes she continued to work at the restaurant until October 2020. *Id.* at ¶¶ 5-7.

- In her affidavit, executed on December 12, 2021, Petitioner's neighbor (a nurse) recalled Petitioner informing her of her vaccine injury within a few days. Exhibit 18 at ¶ 4. After Petitioner's symptoms continued, her neighbor instructed her to take anti-inflammatories and wait to see if her pain would resolve, then suggesting that she see a doctor and fill out a VAERS (Vaccine Adverse Event Reporting System) report. *Id.* at ¶¶ 5-6. Recalling Petitioner's inability to carry items and continued shaking of her arm during a camping trip in August 2021, the neighbor insists Petitioner continues to suffer symptoms from her alleged injury. *Id.* at ¶¶ 8-11.

    1. Pain Onset

The record as a whole supports Petitioner's description of right shoulder pain beginning immediately upon vaccination. When seeking treatment (within a month of vaccination), Petitioner consistently reported right shoulder pain ever since receiving the flu vaccine. Exhibit 5 at 17; Exhibit 6 at 1; Exhibit 7 at 1; Exhibit 8 at 2; Exhibit 7 at 7 (in chronologic order). Without fail, Petitioner attributed her injury to the flu vaccine she received on September 30, 2018. *Id.*

While these close-in-time histories were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that information provided by Petitioner to a treater and contained in a contemporaneous record deserves weight, and should not be considered subjective merely because it *came* from a patient, rather than physician.

Additionally, the December 15, 2018 MRI revealed some results attributed to the flu vaccine. Exhibit 7 at 5. After reviewing these MRI results, the orthopedist assessed

Petitioner as suffering from right shoulder pain and effusion "due to flu shot." *Id.* at 8. Furthermore, there is a dearth of evidence supporting a different onset or cause.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

### 2. Severity

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that she suffered symptoms of her alleged SIRVA beyond March 30, 2019 (assuming an immediate onset on September 30, 2018 – which I have found the record preponderantly supports). The above medical entries preponderantly suggest Petitioner continued to suffer from pain, and some minimal limitations in ROM, at least several weeks after her last PT session on March 15, 2019 - thus satisfying that severity requirement.

Although Petitioner received only conservative treatment - taking ibuprofen, undergoing an MRI, attending only six PT sessions, and declining a steroid injection - she reported severe pain levels and minimal improvement throughout this treatment course. Most importantly, Petitioner reported feeling about the same at her last PT session on March 15, 2019, only two weeks and one day shy of the six-month mark. Exhibit 8 at 3. Furthermore, Petitioner reported that she wished to cease formal PT, not because her symptoms had resolved, but because her symptoms were <u>not</u> improving. Exhibit 7 at 8.

In *Kirby*, the Federal Circuit explained that its holding in *Cucuras* was limited to "the unremarkable proposition that it is not erroneous to give greater weight to contemporaneous medical records than to later, contradictory testimony," but that this principle should not be interpreted as a finding that "the medical records are presumptively accurate and complete, . . . that when a person is ill, he reports all of his problems to his doctor, who then faithfully records everything he is told." *Kirby,* 997 F.3d at 1382-83. In that case, the Circuit determined that the special master's finding of six-month sequela was not arbitrary or capricious, despite the lack of recorded symptoms and the *Kirby* petitioner's general statements of feeling fine or having no complaint. *Id.* at 1383.

Petitioner's lack of improvement while attending PT, and her reliance thereafter on only a HEP, supports the premise that she would not have experienced a full symptom resolution before the end of the month, only 15 days later. Had Petitioner received other treatment, such as a steroid injection, she may have obtained such accelerated relief - but she declined the injection offered by her orthopedist in late February 2019.

Although Petitioner's overall limited medical care course, including her choice to cease PT, suggests a lower pain and suffering award will be proper in calculating damages, it does *not* mean I cannot find the basic requirement of six months severity met. Accordingly, there is preponderant evidence to establish Petitioner suffered the residual effects of his alleged SIRVA for more than six months.

### III.     Additional Requirements for Entitlement

#### A.     Legal Standards

In addition to requirements concerning the vaccination received, the pain onset and duration of petitioner's injury (discussed above in Section II), and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

10

abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B.     Analysis

As I have determined in this ruling, the record supports a finding that Petitioner suffered pain within 48 hours of vaccination and the residual effects of his SIRVA for more than six months. *See supra* Section II.B.; 42 C.F.R. § 100.3(c)(10)(iii) (second QAI criterion); Section 11(c)(1)(D)(i) (the Vaccine Act's six-month severity requirement). Respondent has stated no further objections to compensation, and I find Petitioner has otherwise satisfied all criteria for a Table SIRVA injury following receipt of the flu vaccine and all other requirements for compensation.

First, there is no evidence of prior right shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And Petitioner exhibited pain and limitations in ROM solely in her right, injured shoulder. *E.g.,* Exhibit 5 at 17-18 (first report of pain in October 2018); *see* 42 C.F.R. § 100.3(c)(10)(iii) (third QAI criterion). Her later reports of pain radiating to her elbow and into her neck do not prevent her from satisfying this Table requirement. *See* Exhibit 7 at 1, 7-8 (describing pain which originated in Petitioner shoulder and later describing her neck pain as merely soreness).

Additionally, there is no evidence that Petitioner has collected a civil award for her injury. *See* Section 11(c)(1)(E) (lack of prior civil award). And the vaccine record shows

11

Petitioner received the flu vaccine at Wegmans in Amherst, New York. Exhibit 4 at 1-2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Although the vaccine record does not list the site of administration, Petitioner's consistent histories, which I found also supported an immediate pain onset, are sufficient to establish right arm situs. Exhibit 5 at 17; Exhibit 6 at 1; Exhibit 7 at 1; Exhibit 8 at 2; Exhibit 7 at 7 (in chronologic order). Furthermore, Respondent did not include the lack of situs information as an objection in this case. Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### IV. Appropriate Amount of Compensation

Although I have found Petitioner entitled to compensation, I do not expect the amount awarded for Petitioner's past pain and suffering to be great. Despite her reports of ongoing symptoms, Petitioner has not pursued further treatment. And some of the symptoms she reported, such as the clicking and popping, are not typical of a SIRVA Injury.

Furthermore, the treatment Petitioner did receive was minimal. Even though she reported little improvement with PT, Petitioner declined an offered steroid injection. Thus, Petitioner should not expect a substantial pain and suffering award, given the overall preponderance of evidence supporting a milder SIRVA injury.

### Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA and the Vaccine Act's severity requirement needed for both Table and non-Table claims. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master